Horace E. Oliver v. Commissioner. Kathleen Oliver v. Commissioner.
Oliver v. Commissioner
Docket Nos. 41084, 41085.
United States Tax Court
1954 Tax Ct. Memo LEXIS 312; 13 T.C.M. (CCH) 67; T.C.M. (RIA) 54034; January 29, 1954
*312 In 1946 Horace E. Oliver contributed 40 lots to a partnership in which he owned a 50 per cent interest. The partnership built houses on the lots and sold them in the ordinary course of its business during 1946 and 1947. The partners treated the transfer of the lots as a sale to the partnership. They agreed that the F.H.A. appraisal value of the lots should be credited to Oliver's account. Petitioners reported the excess of such value over the cost of the lots as a long-term capital gain. The partnership computed gain on the sale of the houses and lots using the F.H.A. appraisal value as its basis for the lots. Held, the excess of F.H.A. appraisal value over the cost of the lots was ordinary income. Wm. Bernard Clinton, Esq., 1016 National City Building, Dallas, Tex., for the petitioners. J. Marvin Kelley, Esq., for *313 the respondent. RICE
Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income tax for the year 1946 of $3,868.24 and for the year 1947 of $2,405.16 determined against Horace E. Oliver (hereinafter referred to as the petitioner), and in like amounts for such years determined against his wife, Kathleen Oliver. The issue to be decided is whether gain realized from the sale of certain lots in 1946 and 1947 is taxable as a long-term capital gain under section 117 of the Internal Revenue Code, or as ordinary income. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein. Petitioner and Kathleen Oliver were husband and wife during the years in question and residents of Dallas, Texas. They filed individual income tax returns on the community-property basis for such years with the collector of internal revenue in that city. Petitioner for more than 30 years was a food broker. He carried on such business for the most part in partnership with one P. K. Taylor (hereinafter referred to as Taylor), under the name of Oliver-Taylor Company in *314 Dallas, Texas, and Oliver-Taylor-Bell Company in Houston. In 1946 and 1947, the major portion of petitioner's income came from these partnerships and the greater part of his time was devoted to them. In both years, petitioner also received dividends from stock investments, rents, interest, and oil royalties. In 1937, petitioner, Taylor, and one M. F. Webster, at the latter's instigation, formed a partnership known as the W.O.T. Realty Company. This company purchased approximately 10 acres of land in Wilshire Heights for the purpose of subdividing it and selling residential building lots. Webster was responsible for the planning and development of the property. Petitioner contributed most of the money and managed the financial aspects of the venture. After operating for approximately a year, the partnership was dissolved, and petitioner received 14 lots as his share of its assets. On October 29, 1937, petitioner purchased 5 lots or Fondren Street in the City of University Park (hereinafter referred to as the Fondren lots), and the following year paid a city paving assessment thereon. A part of one of the lots was sold in 1941; the remaining footage was divided into six 50-foot lots. *315 In 1938 petitioner, by oral agreement, formed a partnership, known as the Horace E. Oliver Company, with his brother, D. C. Oliver, for the purpose of building and selling houses. D. C. Oliver had been actively engaged in the real estate business in Dallas for many years. The business of the partnership was primarily conducted by him; and, petitioner devoted but little time to it. He contributed much of the business capital and shared equally in its profits. The title to all real property of the partnership was held in petitioner's name until disposed of. D. C. Oliver held a power of attorney authorizing him to convey title to real estate held in petitioner's name. Petitioner's account in the partnership books was credited in the amount of $10,470, which represented the value of the 14 lots in Wilshire Heights, received in liquidation of the W.O.T. Company. Houses were built and sold by the partnership on the Wilshire Heights lots, and, with the proceeds therefrom, additional lots were purchased and houses built and sold. Because of war-time restrictions imposed by the Federal Government on private residential construction, petitioner and his brother decided to terminate *316 the business of the Horace E. Oliver Company. D. C. Oliver accepted cash in settlement of his partnership capital account, and petitioner accepted the firm's 36 vacant building lots, already held in his name. After the lifting of war-time residential building restrictions, in 1946, petitioner and his brother, by oral agreement, formed a new partnership, again known as the Horace E. Oliver Company. Its books were a continuation of the ones used by the earlier partnership. D. C. Oliver was the manager of the firm, but contributed no capital. Petitioner knew little of the day-to-day operations of the business, but, as before, supplied the capital and credit for the business and shared equally in the profits. All real estate was held in his name, but conveyed by D. C. Oliver under a power of attorney, whenever a sale was made. At the outset of the new partnership, petitioner and his brother decided to use 34 of the lots which petitioner received in liquidation of the old partnership and his 6 Fondren lots in the new venture's building activities. The partners agreed that the use of the lots by the firm would be considered as a sale of them by petitioner and that the lots should be *317 valued at the then current F.H.A. appraisal rates. Petitioner's capital account was initially credited with his cost value of the lots; and as plans and specifications for the houses to be built on the lots were approved by F.H.A., petitioner's account was further credited with the excess of such appraisal over his cost. In 1946, houses were built and sold on 26 of the petitioner's lots. In 1947, additional houses were built and sold on his remaining 14 lots. On September 18, 1948, petitioner received a check in the amount of $50,000 from the partnership, in full payment of the 40 lots at the F.H.A. appraised value, except for $150 which remained as a credit balance on his capital account. Petitioner never held a real estate dealer's license. No "For Sale" signs were ever placed on the lots as such, and none were advertised for sale. The partnership reported its income for the years in question on the cash receipts and disbursements basis. Its gain on the sale of the 40 houses and lots was computed on the basis of the F.H.A. appraisal value for the lots plus construction costs. Petitioner reported his equal share of such gain as ordinary income. On his return for 1946, petitioner *318 reported the excess of the F.H.A. appraisal value over the cost to him of the 20 lots which, together with the houses constructed thereon, were sold in that year as a long-term capital gain. The excess of F.H.A. appraisal value over the cost to him of the 6 Fondren lots, on which houses were also built and sold in 1946, he reported as ordinary income on his return for that year, but now contends that such gain was a long-term capital gain and should have been so reported. On his return for 1947, the excess of the F.H.A. appraisal value over the cost to him of the 14 lots sold in that year was reported as a long-term capital gain. Respondent determined that such gain was ordinary income and asserted the deficiencies herein. Petitioner was engaged in the real estate business. The 40 lots, on which the partnership constructed houses in 1946 and 1947, were petitioner's capital contribution to it and were property held by it for sale to customers in the ordinary course of its trade or business. Opinion RICE, Judge: Petitioner argues that he was not engaged in the real estate business; that the 40 lots here in question were capital assets which he sold to the new Horace E. Oliver *319 Company in 1946 and 1947; and that under Texas law equitable title to the lots passed to the partnership at the time of sale even though legal title remained in his name. The fallacy of petitioner's argument is his attempt to cloak the transfer of the 40 lots to the partnership with the characteristics of a sale. We have found as a fact that the lots were petitioner's capital contribution to the partnership. The oral agreement, under which he and his brother began business again in 1946, was that he would supply the capital and credit for the firm and his brother would manage the operation. His capital account on the books was initially credited with his cost value of the lots. Plans and specifications for the houses to be built thereon were submitted to the F.H.A. which appraised the lots and indicated the extent to which it would guarantee construction loans. Subsequent to the F.H.A. appraisal, his capital account was further credited with the excess of that appraisal value over his cost value, already credited. However, he, in fact, received no cash in payment for the lots until September 1948, when a partnership check in the amount of $50,000 was issued to him. With the proceeds *320 from the sale of the 40 lots and houses built thereon, the partnership bought other land and continued its building activities. There is every indication that had petitioner not possessed the lots at the formation of the new partnership, it would have been necessary for him to have contributed the funds with which to purchase vacant building lots for the firm's use. When petitioner transferred the lots to the partnership as his capital contribution to it, he realized no taxable gain on any increase in their value over his cost basis. Helvering v. Walbridge, 70 Fed. (2d) 683 (C.A. 2, 1934), certiorari denied 293 U.S. 594 (1934). Regulations 111, section 29.113 (a) (13)-1, provides: "* * * The basis of property contributed in kind by a partner to partnership capital after February 28, 1913, is the cost or other basis thereof to the contributing partner. * * *" Thus, the gain realized by the partnership upon the sale of the lots should have been computed by using the petitioner's cost basis. In the hands of the partnership, the lots became a necessary part *321 of its stock in trade - its property held for sale to customers in the ordinary course of its business within the meaning of section 117 of the Code. Hence, any gain realized on their sale was ordinary income to it and taxable as such to the partners according to their agreement for distributing partnership profits. We regard the effect of the agreement between the partners that the lots should be "purchased" by the partnership at the F.H.A. appraisal value to be simply a part of their profit-sharing agreement, i.e., that petitioner would receive out of partnership earnings the excess of the F.H.A. valuation over his cost, and the remaining profits were to be distributed equally to the two partners. Irrespective of whether petitioner held the lots for investment or for sale prior to the time when he contributed them to partnership capital, once he chose that vehicle for disposing of them, they became stock in trade of a real estate operation; and any gain realized on their sale was taxable as ordinary income. Decision will be entered for the respondent.